**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINA
NEWPORT NEWS DIVISION**

| | |
|---|---|
| **ERIC S. MOORE, SR., et al.**, | * |
| | * |
| Plaintiff, | * |
| v. | * Civil Action No: 4:11-cv-122 |
| | * |
| **LAW OFFICES OF** | * |
| **SHAPIRO & BURSON, LLP** | * |
| | * |
| Defendants. | * |

**S&B'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COUNTS I, II, AND IV OF THE COMPLAINT**

Defendant Shapiro & Burson, LLP ("S&B") hereby submits its memorandum in support of its motion to dismiss Counts I, II, and IV of the Complaint filed by Plaintiffs Eric S. Moore, Sr. and Brenda Moore ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support thereof, states as follows:

INTRODUCTION AND BACKGROUND

S&B is a law firm.  Compl. at ¶4.  The present action involves four separate claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq., against the law firm in connection with a pre-foreclosure notices to the Plaintiff.   This motion to dismiss addresses only Counts I, II, and IV.

Under the guise of an FDCPA claim, the present counts challenge the conduct and validity of the foreclosure sale.  The gravamen of these counts lawsuit is the allegation that BAC Home Loans Servicing, L.P. who appointed the trustee, was not the "owner" of the note, Compl. at ¶57, and as a result, the resulting notices of foreclosure were improper.

Noticeably absent is any assertion as to whom Plaintiff believes was the holder (not the owner) of their loan or person entitled to enforce their loan, any assertion that such "true

holder" has made a claim or demand upon Plaintiffs, or that Plaintiffs' loan was not credited with the foreclosure sale proceeds. Plaintiffs admit being in default of their loan. Plaintiffs do not claim that the secured party did not intend to proceed with foreclosure, or did not authorize such foreclosure.

However, separately, Plaintiffs have filed a lawsuit against BAC and Federal National Mortgage Association ("Fannie Mae"), the foreclosure purchaser, challenging the foreclosure sale, and claiming that in their loan modification negotiations with BAC, they were misled them into believing the foreclosure sale would be cancelled if they applied for a [second] loan modification. See Moore, et ux. v. BAC Home Loans Servicing, LP, et al., Newport News Circuit Court CL 11-00361T-01. A copy of that lawsuit is attached as Exhibit A. That case is pending, and S&B is not a named party.

In the present case, Count I asserts a violation under 15 U.S.C. §1692e, because Plaintiffs claim that S&B falsely advised them that the original promissory note was "unavailable" as of August 6, 2010, Compl. at ¶41 (emphasis added), and by advising them that BAC was the creditor of their loan. Compl. at ¶42, see also ¶¶21, 55.

Count II asserts that S&B failed to identify the actual amount of the debt, in violation of 15 U.S.C. §1692. However, both the Complaint and the Exhibit attached to it indicate that the amount owed as of August 6, 2010, is $338,855.06. See Compl. at ¶17 and Ex. C. No facts are alleged otherwise.

Count IV accuses S&B of violating 15 U.S.C. §1692f(6) by allegedly threatening foreclosure, when "[BAC] had no authority to appoint Defendant [sic] as a substitute trustee as

BAC was not the noteholder."  Compl. at ¶55.[2]  Plaintiffs admit that BAC is their loan servicer, Compl. at ¶8, and the note attached to the Complaint includes endorsements to BAC under its former name.  Compl. at Ex. B.  No facts are alleged as to the identity of the "true" noteholder.

Yet Plaintiffs attack the authority of BAC to appoint the substitute trustee, and attack the appointment itself by claiming that it the signatory lacked standing and or personal knowledge of the "facts contained in the sworn statement"— requirements non-existent under Virginia law.  Compl. at ¶56.  Moreover, Plaintiff ignores that there are two contemporaneous assignments from the named beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS") to BAC in the land records.  A copy of the latest assignment is attached hereto as **Exhibit B**, which is dated August 6, 2010, in favor of BAC and at Document Number 10015862 in the land records of Newport News, Virginia.[3]

The prior assignment was recorded April 30, 2009, at Document Number 090008012 in the land records of Newport News, Virginia, a copy of which is attached as **Exhibit C**.

At that time of the earlier appointment, BAC, under its predecessor name, Countrywide Home Loans Servicing, L.P., had also appointed the same substitute trustee – Professional

---

[2]  S&B is not the substitute trustee.  The substitute trustee is Professional Foreclosure Corporation of Virginia.  A copy of the appointment is attached as Exhibit I.

[3]  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  See Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-397 (4th Cir. W. Va. 2006) ("[T]here are exceptions to the rule that a court may not consider [in determining a motion to dismiss] any documents outside of the complaint. Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.") (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995); Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

Foreclosure Corporation of Virginia ("PFC") – as trustee, see Ex. A.  A copy of the earlier appointment is attached hereto as **Exhibit D**, which is dated April 15, 2009, and recorded at Document Number 090008013 in the land records of Newport News, Virginia.  That appointment was made in connection with a previous foreclosure, which was cancelled due to a prior loan modification/workout agreement under the loan.

STANDARD OF REVIEW

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Although the Court must accept well-pled allegations in Plaintiffs' Complaint as true, it is not required to accept conclusory factual allegations, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), and cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged."  Orcilla v. Bank of Am., N.A., 2011 U.S. Dist. Lexis 46639, 4-5 (N.D. Cal. Apr. 25, 2011) (quoting Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983).  Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); Papasan v. Allain, 478 U.S. 265, 286 (1986); Schweikert v. Bank of America, 521 F.3d 285, 288 (4th Cir. 2008); Eastern Shore Markets v. J.D. Associates LTD, 213 F.3d 175, 180 (4th Cir. 2000).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. 662, 129 S.Ct. at 1949.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id.

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his

4

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> (citations omitted). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court.'" <u>Id.</u> at 558 (citation omitted).

<u>DISCUSSION</u>

**I.      BAC is the holder, loan servicer, and beneficiary of the loan, and therefore constitutes the creditor to whom the debt is owed.**

The gravamen of the Plaintiffs' challenge to the foreclosure sale itself rests upon the faulty premise that BAC was not authorized to appoint and did not validly appoint the the trustee, who Plaintiffs incorrectly identify as S&B.  Although Plaintiffs admit that BAC is "at all relevant times" their loan servicer, Compl. at ¶8, they claim that it was not entitled to foreclose because it is not the owner of the loan, Compl. at ¶56, and speculate that BAC was not the holder of the promissory note.   Factually, the challenge to the appointment of the trustee (and the right of the trustee to foreclose), is belied by the assignments, <u>see</u> Ex. B and C, and by the prior appointment of substitute trustee.   <u>See</u> Ex. D.  Further, to the extent that Plaintiff infers that only the owner of a loan could foreclose, such contention is contradicted by Virginia law.

Substantively, Plaintiffs claims are insufficient to attack the foreclosure.  Virginia law provides that a foreclosure may be prosecuted by the beneficiary under the deed of trust, <u>see</u> Va.

5

Code §55-59(9) which would include any nominee of the lender such as MERS, <u>Tapia v.</u> <u>United States Bank, N.A.</u>, 2010 U.S. Dist. LEXIS 62448, 19-20 (E.D. Va. June 22, 2010), the noteholder or its agent, <u>Horvath v. Bank of N.Y.</u>, 641 F.3d 617 (4th Cir. 2011), including loan servicer, <u>see</u> <u>Larota-Florez v. Goldman Sachs Mortgage Co.</u>, 719 F. Supp 2d 636, 640-41 (E.D. Va. 2010), <u>aff'd</u> <u>per</u> <u>curium</u> at Appeal No. 10-1523 (4th Cir July 28, 2011), or a non-holder in possession with rights of holder.  <u>See</u> Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).[4]

Indeed, Plaintiff confuses the distinction between an owner of a note or underlying debt, versus its holder.  Under the Commercial Code, a party entitled to enforce the note need not be the owner of the underlying debt.  The comments to the Commercial Code explain that: "[t]he right to enforce an instrument and ownership of the instrument are two different concepts. . . . Ownership rights in instruments may be determined by the principles of the law of property, independent of Title 3, which do not depend upon whether the instrument was transferred under Section 3-203."  Virginia Code, §8.3A-203, Official Comment 1.  Under Virginia Code §8.3A-301, the right to enforce a promissory note inures to its holder, not its owner.

Thus, in a foreclosure challenge under Virginia law, the United States Court of Appeals for the Fourth Circuit explained that "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it."  <u>Horvath v. Bank of N.Y., N.A.</u>, 641 F.3d 617, 621 (4th Cir. 2011); <u>see</u> <u>also</u> <u>Bolouri v. Bank of America, N.A. et al.</u>, No. 1:10-

---

[4] Generally, the terms of industry standard promissory notes secured by residential real estate indicate that "[t]he lender or anyone who takes this Note by transfer and who is entitled to receive payment is called the 'noteholder,'" which would allow enforcement by a non-holder in

cv-00225-LO-TCB (E.D. Va. August 24, 2010) aff'd per curiam at Appeal No. 10-2069 (4th Cir August 11, 2011).

Likewise, in Rosales v. Countrywide Home Loans, Loudoun Co. Cir Ct. Case No. 54255 (2010), attached hereto as Exhibit E, Judge Horne determined that a note endorsed in blank may be enforced by its possessor, whoever that may be.  Specifically, Judge Horne held that such a possessor who may only be a loan servicer has the right enforce the rights and remedies contained in the Note and the Deed of Trust that secures it, including the right to foreclose on the Property. See id. Although Rosales is an unreported case from the Circuit Court of Loudoun County, Mr. Rosales appealed.  The Supreme Court of Virginia denied his appeal, yet gave an unusual explanation for doing so, specifically noting its agreement with Judge Horne's analysis, explaining:

> Upon review of the record in this case and consideration of the argument submitted in support of and in opposition to the granting of an appeal, the Court is of the opinion there is no reversible error in the judgment complained of.  Accordingly, the Court refuses the petition for appeal.

See Pedro Rosales v. Countrywide Home Loans n/k/a/ Bank of America Mortgage, Supreme Ct. of Virginia Record No. 102289 (April 12, 2011) (emphasis added) (Ex. H).

Virginia statutory law recognizes that the deed of trust secures repayment of the note. See Va. Code §55-59(1) ("The deed [of trust] shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation.").  Notably, Virginia Code §55-59(9) specifically authorizes either the beneficiary or noteholder, or holder of a majority interest in a note, to appoint a substitute

_____

possession with rights of a holder.  See Va. Code 8.3A-301(ii); Va. Code 8.3A-203(b).

trustee on the deed of trust securing such debt.

Specifically, that statute provides:

> The party secured by the deed of trust, or the holders of greater
> than fifty percent of the monetary obligations secured thereby,
> shall have the right and power to appoint a substitute trustee or
> trustees for any reason and, regardless of whether such right and
> power is expressly granted in such deed of trust, by executing and
> acknowledging an instrument designating and appointing a
> substitute. When the instrument of appointment has been
> executed, the substitute trustee or trustees named therein shall be
> vested with all the powers, rights, authority and duties vested in
> the trustee or trustees in the original deed of trust. . . .
> .

Va. Code §55-59(9).

To the extent that Plaintiff suggest that the owner of the loan must initiate the
foreclosure, rather than the noteholder or loan servicer, such distinction has been and must be
rejected. Indeed, in <u>Rosales</u>, addressing Countrywide's right to foreclose as a loan servicer, the
court found such authority both under contract and agency law:

> In addition to Countrywide's rights under the Uniform
> Commercial Code, it also has the authority under the Adjustable
> Rate Note and Deed of Trust to exercise the rights and remedies
> set forth therein. The Adjustable Rate Note states: "The Lender
> or anyone who takes this Note by transfer and who is entitled to
> receive payments under the Note is called the 'Note Holder."
> Adjustable Rate Note ¶1. As stipulated, Countrywide possesses
> the Adjustable Rate Note. Moreover, Countrywide as loan
> servicer, has the right to collect (or receive) payments due under
> the Adjutsable Rate Note and the Deed of Trust. <u>See</u>, Deed of
> Trust ¶20. Hence, Countrywide is the "Note Holder," "The Note
> Holder may enforce its rights under the [the Adjustable Rate
> Note]" against Plaintiff, including the rights and remedies
> contained in the Deed of Trust. Adjustable Rate Note ¶9.
> Indeed, the rights and remedies in the Deed of Trust protect the
> Note Holder from possible losses that occur if Plaintiff fails to
> make payments under the Adjustable Rate Note. Adjustable Rate
> Note ¶11. <u>Therefore, Countrywide, as the Note Holder, has the
> right to foreclose on the Property. Even if Countrywide was not
> the Note Holder, it is still authorized under the contract and</u>

8

agency law, to initiate foreclosure proceedings on the Property.

Id. at *6-7 (emphasis added) (Ex. H).

Likewise, this Court has also determined that loan servicers alone have the authority to foreclose on property that secured the loans that they service on behalf of the holder. See Larota-Florez v. Goldman Sachs Mortgage Co., 719 F.Supp 2d 636, 640-41 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1523 (4th Cir. July 28, 2011) ("As servicer, Litton has the right to collect payments on behalf of the holder and the right to foreclose upon default. Therefore, Litton's appointment of Professional as substitute trustee under the Deed of Trust was authorized as a matter of contract and agency law.") (emphasis added); cf. Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor," and noting that "operators assigned their claims lock, stock, and barrel, and precedent makes clear that an assignee can sue based on his assignor's injuries.").

And the Deed of Trust itself confirms that the owner has no right to collect payment. See **Exhibit F** (Deed of Trust). Specifically, Section 20 of the Deed of Trust provides that "[A] sale [of the Note] might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Agreement, and Applicable Law. . . . If the Note is sold and thereafter the Loan is servicer by a Loan Servicer other that the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note

purchaser unless otherwise provided by the Note purchaser." Id. at p. 12, §20.  Here, there is no allegation that the "owner" assumed any of the loan servicing obligations, and the mere sale of the Note does not affect the servicing of the loan, including the ability of the servicer to prosecute a foreclosure.[5]

Plaintiffs admit that BAC is their loan servicer, that the loan is in default, that the note was endorsed to Countrywide Home Loans, see Ex. B, which is identified as the former name of BAC Home Loans Servicing, LP.  See Compl. at ¶8, and Ex. C.  Plaintiffs have not alleged that any other party has made a claim or demand upon her inconsistent with the foreclosure sale, that any "true owner" or "true holder" of the loan has challenged BAC's right to foreclose, or that Plaintiffs did not receive credit against the loan, from the proceeds of the sale.  Indeed, to the extent that Plaintiffs suggest that Fannie Mae should have made the appointment, such claim is undermined by Virginia law, by their claims against BAC in the separate lawuit, including Exhibit E to such lawsuit, in which Fannie Mae indicates "[t]his property is now owned by Fannie Mae."  See Ex. A (at Ex. E thereto).  Moreover, Plaintiffs claims are also undermined by Fannie Mae's published servicing guidelines.

---

[5] Indeed, the Commercial Code limits a borrower's ability to assert that a third-party has a claim to an instrument.  Notably, Virginia Code §8.3A-305(c) provides:

> [I]n an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (§ 8.3A-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument. . . .

Va. Code §8.3A-305(c); see also Va. Code §55-59.1(B).

Under those guidelines, Fannie Mae itself designates its servicers as holders of the loan. Announcement 08-12 dated May 23, 2008, attached as **Exhibit G**, confirms that for Fannie Mae loans, Fannie Mae is at all times the owner of the mortgage note. See id. p. 1 ("Fannie Mae is at all times the owner of the mortgage note, . . ."); accord Fannie Mae 2011 Servicing Guide, Part I §202.07.01.

The Announcement also confirms that upon commencement of the foreclosure representation, the servicer is entitled to enforce the note as servicer in its own name, and that temporary transfer of possession of such note occurs automatically and immediately. Specifically, page 2 of Announcement 08-12 explains:

> In order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions, bankruptcy cases, probate proceedings, or other legal proceedings.
>
> This temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of Fannie Mae's interests in the foreclosure, bankruptcy, probate, or other legal proceeding.
>
> When Fannie Mae transfers possession, the servicer becomes the holder of the note as follows:
>
> • If a note is held at Fannie Mae's DDC, Fannie Mae has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit.
>
> • If the note is held by a document custodian on Fannie Mae's behalf, the custodian also has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the

> note and is authorized and entitled to enforce the note in the name
> of the servicer for Fannie Mae's benefit.

Announcement 08-12; <u>accord</u> Fannie Mae 2011 Servicing Guide, Part I §202.07.02.[6]

Thus, any holding that a servicer could not foreclose on a Fannie Mae loan would be contrary not only to Virginia law, Fannie Mae's own guidelines and position, and would be inconsistent with national lending and servicing standards.

To the extent that Plaintiffs suggest that BAC must prove a chain of custody of the note, or prove its standing, such claim must be rejected. Indeed, in <u>Jimenez v. Citibank</u>, Va. S. Ct. Record No. 101956 (December 16, 2011), attached hereto as **<u>Exhibit H</u>** the Supreme Court of Virginia rejected a borrower's demand that the CitiBank produce a chain of custody of the note. In <u>Jimenez</u>, the Virginia Court affirmed the trial court's dismissal with prejudice of a borrower's challenge to a foreclosure, which observed that the borrower did not allege in her complaint that she was current on her obligations under the note and deed of trust or that parties other than CitiBank or the trustees were seeking to foreclose on the property. Slip Op. at 3.

On Appeal, the Court noted that the deficiencies in the Ms. Jimenez' argument:

> In this case, Jimenez alleged that the party instituting the foreclosure proceedings possessed the promissory note and did not allege that the note was freely transferable negotiable instrument. She did not allege that she was current in her payments or that foreclosure was not a proper remedy against her under the terms of the deed note or deed of trust. Rather, she disputed that CitiBank had the authority to act pursuant to the note and deed of trust because CitiBank and Equity did not demonstrate – and the land records did not reflect – how CitiBank came to possess the note.

Op. at p. 5.

---

[6] This information is publicly available at https://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2008/0812.pdf, and https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf.

Rejecting her demand that CitiBank prove its chain of possession of the note, the Supreme Court explained that "[f]or nearly two hundred years, the law of Virginia has been to the contrary." Slip Op. at 5. In doing so, the Court explained that "Virginia's statutory scheme for extrajudicial foreclosure does not afford her a right to the information she seeks." Op. at p. 6. Here, Plaintiffs do not allege that they are current or that a third party has made a demand upon them under the loan, and their speculative claims regarding some unknown and unidentified noteholder are likewise insufficient.

Moreover, BAC is the record beneficiary under the Deed of Trust pursuant to both of the assignments, in its own name, see Ex. C, or its predecessor. See Ex. B. See Va. Code §55-66.01 ("Nothing in this statute shall imply that recordation of the instrument of assignment or a certificate of transfer is necessary in order to transfer to an assignee the benefit of the security provided by the deed of trust, mortgage or vendor's lien.") (Emphasis added)); Tapia v. United States Bank, N.A., 718 F. Supp. 2d 689, 696-97 (E.D. Va. 2010), aff'd per curium at Appeal No. 10-1856, 2011 U.S. App. Lexis 15845 (4th Cir. August 1, 2011).

Specifically, in Tapia, the borrowers challenged a foreclosure initiated by MERS, claiming that MERS was not the holder of the monetary obligations secured by the deed of trust. See id. at n. 21. In that case, which involved a deed of trust with identical provisions regarding MERS, the Court explained:

> The Court finds this argument unavailing because the Deed of Trust authorized MERS to foreclose the Property in the event that Plaintiffs defaulted on the loan. The Deed of Trust states that "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." The Deed of Trust also provides "if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the Property;

and to take any action required of Lender including, but not limited to releasing and canceling this Security Instrument." Under the terms of the Deed of Trust, MERS has two roles: beneficiary and nominee for Lender. By signing the Deed of Trust, Plaintiffs agreed that MERS, as nominee for Lender and Lender's successors and assigns, had the right to foreclose the Property and recognized that MERS could take any action required of Lender. Furthermore, Plaintiffs make no legally-supported argument and plead no facts in the Amended Complaint as to why MERS as nominee did not have the right to foreclose and sell the Property in accordance with law or custom.   As such, Plaintiffs' allegation that none of Defendants have the authority to enforce the Deed of Trust is untenable.

Id. Here, MERS has assigned its rights to BAC, and accordingly, it is properly identifiable as record beneficiary, and entitled to proceed with foreclosure.[7]

In sum, the present challenge to BAC's right to foreclose is inconsistent with Virginia law, and at minimum, improperly plead. Undisputed is that BAC is the loan servicer and record beneficiary. Plaintiffs unsubstantiated claim that BAC is not the holder of the the note, is inconsistent with the efforts to modify the loan, and insufficient absent an allegation that some third party was making a demand upon them under the note. Accordingly, Count IV must be dismissed.

II. **Plaintiffs' challenge to the form of the appointment of substitute trustee misconstrues Virginia law, fail to impugn such document as a matter of law, and fail to impeach the authority and validity of the foreclosure sale.**

Plaintiffs' apparent challenge to the appointment of trustee is groundless. Specifically,

---

[7] Virginia law also recognizes that another form of assignment of those rights is by endorsement of the note. See Va. Code §55-66.01 (permitting assignment of the debt to be recorded, at the option of the parties to such assignment, and providing [f]or purposes of this statute, the word "assigned" shall include endorsed, pledged, hypothecated or otherwise transferred. . . .") (Emphasis added). Thus, as holder of the note, Green Tree was properly designated as beneficiary. The complaint fails to allege that Green Tree was not the holder, or otherwise plead who the holder was. Rather it speaks in terms of owner, which is insufficient to state a cause of action.

Plaintiffs allege that the "individual that signed a sworn statement on behalf of [BAC] purporting to have personal knowledge of the facts contained in the sworn statement or the legal standing to take the actions described therein, did not have such personal knowledge of such legal standing." Compl. at 56. As an initial matter, assuming they are referring to the appointment of substitute trustee, because there is a prior appointment already naming PFC as trustee, see Ex. D, the attack on the recent appointment does not affect the authority of the trustee. Second, such allegation does not implicate S&B, rather it is directed against BAC.

Moreover, given that such instruments are acts and/or grants rather than affidavits, the legal sufficiency of such documents do not depend on the personal knowledge or standing of the signatory,[8] and therefore plaintiffs allegations are insufficient to impugn such documents, and immaterial to the validity of the instrument. Cf. Harkins v. Forsyth, 38 Va. 294, 305 (Va. 1840) ("The deed then is made to depend, not upon the truth of the certificate, but upon its existence, and its delivery to the clerk; and if so, the enquiry whether it be true or false is an immaterial enquiry.")

---

[8] In Tapia, this Court also rejected the plaintiff's argument challenging the lender's standing in the context of a Virginia foreclosure:

> Plaintiffs argue that Defendants could not demonstrate standing to institute the foreclosure because they could not prove Article III injury. The Court rejects Plaintiffs' standing argument to the extent that Plaintiffs use the term "standing" to refer to the requirement that a secured party first prove in court its right to initiate a foreclosure before the procedure commences. The fundamental flaw in Plaintiffs' allegation is that Virginia is a non-judicial foreclosure state. Sections 55-59.1 through 55-59.4, which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove "standing" in a court of law before initiating the foreclosure process. The Court therefore rejects Plaintiffs' "standing" argument.

Tapia, 718 F.Supp. 2d at 687-98 (citations omitted).

Notably, an appointment of substitute trustee is an act and not an affidavit.  Pursuant to Virginia Code §55-59(9), the person making the appointment does so by "executing and acknowledging an instrument designating and appointing a substitute." Id. ("Upon execution, "the substitute trustee or trustees named therein shall be vested with all the powers, rights, authority and duties vested in the trustee or trustees in the original deed of trust. .  ."); cf. Peatross v. Gray, 181 Va. 847, 861, 27 S.E.2d 203, 210 (1943) ("No acknowledgment of this deed was necessary in order to convey the title. The deed operated as a conveyance without any acknowledgment. Code, section 5146. Acknowledgment is necessary for recordation [Code, section 5204], not to pass title. Title passes by the execution and delivery of the deed.") (quoting Gannaway v. Federal Land Bank, 148 Va. 176, 179, 138 S.E. 564 (1927)

Indeed, it appears that Plaintiffs confuse an acknowledgement, which is all that is required for an appointment or conveyance, with an oath.  Explaining the distinction between acknowledgments versus oaths, the Supreme Court of Virginia explained:

> There is a marked difference between acknowledging a signature and signing a document under oath. An acknowledgment merely verifies that the person named executed the document in question. Code § 55-118.3. By swearing to a document, on the other hand, one vouches that the contents of the writing are true.

Cumbee v. Myers, 232 Va. 371, 374, 350 S.E. 2d 633, 634 (1986) (citations omitted).  Under Virginia law, an acknowledgement is all that is required for recordation, and under the Appointment, an acknowledgement is all that was given.

As explained in Cumbee, "[a] certificate of acknowledgment signifies that the person acknowledging the document stated in the presence of the notary that the document was his or her act. The person may either have already signed the document or the person may sign the

16

document in the notary's presence." Id. at 634, 350 S.E.2d at 634. Thus, Plaintiffs claim that the person who executed the instrument lacks personal knowledge or standing does not affect the validity of the instrument, or otherwise make out a claim against S&B.

In In Re: Mortgage Electronic Registration Systems (MERS) Litigations, D. Ariz 2:09-md-02119 (October 3, 2011) Dock. No. 1602, 2011 U.S. Dist. Lexis 117107, a consolidated case involving 72 foreclosures spanning four non-judicial foreclosure states, the United States District Court for Arizona rejected challenges to appointments and assignments in granting the defendant's motion to dismiss, noting that the borrowers lacked standing to challenge such documents. See id. At issue was the involvement MERS, and allegations that "Defendants caused to be recorded various assignments, substitution of trustees, notices of trustee's sales and trustee's deeds upon sale, which were becauss they 'contained false claims, or were otherwise invalid based on MERS' status of making the assignments as 'beneficiary'' . . . [and] that the assignments were 'robosigned,' that is notarized in blank prior to being signed on behalf of MERS. Id. at page 7. The federal court rejected the claims for several reasons.

First, addressing the "robosigning" allegations, the federal court explained that such claims fail absent allegations that the documents were not authorized, and were signed without knowledge of the representations contained in the document. See id. Specifically, the Court explained:

> [T]he allegations of robosigning do not state a claim for two reasons. In the first place, Plaintiffs have not pled sufficient facts that parties who are represented to have signed the MERS Assignments, "did not sign the document, and/or did not have the authority to sign the document, and/or did not have knowledge of the representation contained in the document." These legal conclusions are not supported by sufficient factual pleading.

In Re: MERS Litigations, p.12, 2011 U.S. Dist. Lexis 117107, *42 (Emphasis added).

Further, the Arizona federal court determined that, even if the borrower could assert that the documents were executed without authorization or knowledge of the signatory, the borrower lacked standing to challenge an assignment between the lender and MERS:

> Yet, even if these allegations were well pled, Plaintiffs lack standing to challenge the validity of the MERS assignments. Even if an assignment were voidable, an action to declare an assignment void could only be brought by someone who can demonstrate a concrete and particularized injury in fact that is fairly traceable to the challenged assignment. No such injury is alleged. Thus, Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged Assignments, and do not possess standing to assert a claim based on such. See Bridge v. Aames Cap. Corp., 2010 WL 3834059, at *3 (N.D. Ohio, Sept. 29, 2010) ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not affect whether Borrower owes its obligations, but only to whom Borrower is obligated . . .).

Id., 2011 U.S. Dist. Lexis 117107, *43.

Here, there is no allegation that any document is a forgery, or that such document was not authorized or executed on behalf of the named entity, or that the document is facially defective.   As indicated above, Plaintiffs challenge to the entity's right to foreclosure is insufficiently pled, Plaintiffs suggestion that the signatory and notary have personal knowledge or "standing", seeks to impose requirements inconsistent with Virginia law, that are immaterial to the validity of the documents.  In sum, Plaintiffs challenge to the foreclosure based upon the appointment must be rejected.

18

**III.    Plaintiffs' claim that S&B "falsely" identified BAC as creditor is belied by its status as beneficiary, holder, loan servicer, and the terms of the deed of trust.**

As discussed above, BAC is not only the beneficiary, holder, and loan servicer, but under the terms of the Deed of Trust, it is the proper party to whom payments are to made and to whom payments are owed.  Indeed, under the Note, attached to the complaint as Exhibit B, the borrower's promise to pay is to the Lender, and the Note further provides that "I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Noteholder'."  Compl. Ex. B.

Moreover, in the case of a Fannie Mae loan, for the reasons discussed above, including the terms of the deed of trust and the Fannie Mae Guidelines, if anyone other than the servicer was designated as creditor, that would be likely to confuse the borrower.  Because the loan servicer is entitled to collect the debt, it is properly designated as creditor.  See generally Gomez v. GMAC Mortg., LLC, Nos. 10-13287, 10-13288, 10-13442, 2010 U.S. Dist. Lexis 140626, 2010 WL 5625673, at *3 (E.D. Mich. Dec. 15, 2010) (From the mortgage documents provided by GMAC, it is apparent that Amera was the mortgage originator, GMAC was the mortgage servicer, and MERS was the mortgagee, which means that these Defendants are creditors, not debt collectors.").  Indeed, BAC's status as record beneficiary, pursuant to the recorded assignment (and as holder of the promissory note), establishes it as a proper creditor. Id., see also Lettenmaier v. Fed. Home Loan Mortg. Corp., 2011 U.S. Dist. Lexis 88277, 39-40 (D. Or. Aug. 8, 2011) ("In deeds of trust appointing MERS as a lender's nominee, "MERS becomes the mortgagee of record [and] is listed as the grantee in the official records maintained

at county register of deeds offices." <u>Rinegard-Guirma v. Bank of Am. Nat. Ass'n</u>, No. CV-10-1065-PK, 2010 U.S. Dist. LEXIS 107619, 2010 WL 3945476, at *4 (D. Or. Oct. 6, 2010) (internal quotation omitted). <u>As mortgagee, MERS is essentially the creditor</u>.") (emphasis added); <u>Nicholson v. OneWest Bank</u>, 2010 U.S. Dist. LEXIS 45993, 9-12 (N.D. Ga. Apr. 20, 2010). Here, whether as holder, loan servicer, or assignee under the recorded assignments, BAC is properly identified as creditor.

### IV. Plaintiffs' claim that S&B misrepresented that the note was unavailable is immaterial. If the note was actually available, Plaintiff would be afforded less protection.

Under Count I, Plaintiff asserts that S&B misrepresented that the original note was unavailable and therefore violated 15 U.S.C. §1692e. <u>See</u> <u>e.g.</u> Compl. at ¶66. According to Plaintiff, this representation was false, suggesting that the original note was available to BAC. Compl. at ¶49.

Unclear is how such "misrepresentation", if true (for purposes of argument), could harm them. With the original note at the time of the letter, as holder or non-holder in possession with rights of holder, <u>see</u> Va. Code §8.3A-301(ii), BAC would be entitled to enforce the note, and Plaintiff would not be afforded the right under Va. Code 55-59.1(B) to seek adequate protection. Thus, the notice of unavailability afforded Plaintiffs greater rights than they would have if the note was available.

Specifically, under Virginia Code §55-59.1(B), where the original promissory note is unavailable, the trustee is afforded a safe harbor from challenges to the sale if the beneficiary notifies the borrower of such unavailability, and thereafter provides the trustee an affidavit to

that affect.  <u>See</u> Va. Code §55-59.1(B)[9].

Under that statute, if the borrower believes that he may be subject to more than one claim under the promissory note, she can petition the Court for adequate protection.  Absent a request and grant of adequate protection, where an affidavit is furnished to the trustee, Section 55-59.1 provides that "[i]f the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale."  <u>Id.</u>

---

[9] Specifically, Virginia Code §55-59.1(B) provides:

> B. [1] If a note or other evidence of indebtedness secured by a deed of trust is lost or <u>for any reason</u> cannot be produced and [2] the beneficiary submits to the trustee an affidavit to that effect, [3] the trustee may nonetheless proceed to sale, [4] <u>provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice.</u> The notice shall be sent by certified mail, return receipt requested, to the last known address of the person required to pay the instrument as reflected in the records of the beneficiary and shall include the name and mailing address of the trustee. [5] <u>The notice shall further advise the person required to pay the instrument that if he believes he may be subject to a claim by a person other than the beneficiary to enforce the instrument, he may petition the circuit court of the county or city where the property or some part thereof lies for an order requiring the beneficiary to provide adequate protection against any such claim.</u> [6] If deemed appropriate by the court, the court may condition the sale on a finding that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. [7] Adequate protection may be provided by any reasonable means. [8] If the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale.

Va. Code § 55-59.1 (alterations added, emphasis added).

Here, S&B is not the trustee.  <u>See</u> Exs. D, I.[10]  Further, the trustee does not furnish the notice, it is furnished by the beneficiary, or on its behalf.  The affidavit referred to is provided to the trustee, solely to allow the trustee a safe-harbor against foreclosure challenges.  It is not furnished to the borrower, nor is it required to be furnished to the borrower at the time "<u>beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable.</u>"  Va. Code §55-59.1(B).  Moreover, under subsection (C) of the statute: "Failure to comply with the requirements of notice contained in this section shall not affect the validity of the sale, and a purchaser for value at such sale shall be under no duty to ascertain whether such notice was validly given."  Va. Code §55-59.1(C).

Thus, to the extent that Plaintiffs complain that they received such notice, then they obtained the opportunity to dispute BAC's right to foreclose if they truly believed that it was not the correct entity, by petitioning the circuit court for adequate protection.  Tellingly, Plaintiffs never sought such remedy.  Nor have they alleged reliance or even the potential of

---

[10] However, Virginia Code §26-58 expressly provided that an attorney for the lender may serve as trustee.  That section provides:

> The mere fact that a trustee in a deed of trust to secure a debt due to a corporation is a stockholder, member, employee, officer or director of, or counsel to, the corporation, does not disqualify him from exercising the powers conferred by the trust deed nor does it render voidable a sale by such trustee in the exercise of the powers conferred on him by the trust deed so long as he did not participate in the corporation's decision as to the amount to be bid at the sale of the trust property. Moreover, if the lender secured by the deed of trust bids the amount secured, including interest through the date of sale and costs of foreclosure, the trustee's participation in fixing the bid price by the party secured shall not be deemed improper and such sale shall not be rendered voidable solely by reason of his participation. . . .

<u>Id.</u>

damages from such statement.   Indeed, Plaintiff have engaged BAC in loan modification discussions.  See Ex. A.

Consequently, the alleged "misrepresentation" is neither material, nor would it mislead the borrower in any way.  See Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033 (9th Cir. Wash. 2010) ("false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f."); Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Hahn v. Triumph Partnerships LLC, 557 F.3d 755, 757-59 (7th Cir. 2009); See Holliday v. Virtuoso Sourcing Group, LLC, 2011 U.S. Dist. Lexis 127760, 8-9 (S.D. Ill. Nov. 4, 2011); Albritton v. Sessoms & Rogers, P.A., 2010 U.S. Dist. Lexis 78371, 18-19 (E.D.N.C. Aug. 3, 2010); Diaz v. United Collection Bureau, 2011 U.S. Dist. Lexis 64815 (N.D. Cal. June 16, 2011) ("False but non-material misrepresentations are not likely to mislead the least sophisticated consumer, and therefore are not actionable under the FDCPA.").

In Donohue v. Quick Collect, Inc., the Ninth Circuit, in adopting the materiality standard for alleged false representations under the FDCPA, explained

> In Hahn v. Triumph Partnerships LLC, 557 F.3d 755 (7th Cir. 2009), Chief Judge Easterbrook concluded for a panel of the Seventh Circuit that a false or misleading statement is not actionable under § 1692e unless it is material. With reasoning that we consider persuasive, Chief Judge Easterbrook observed that "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement." Id. at 757 (citing Carter v. United States, 530 U.S. 255, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000); Neder v. United States, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). There is no "reason why materiality should not equally be required in an action based on § 1692e." Id. The purpose of the FDCPA, "to provide information that helps consumers to choose intelligently," would not be furthered by creating liability as to immaterial information because "by definition immaterial information neither contributes to that

> objective (if the statement is correct) nor undermines it (if the statement is incorrect)." Id. at 757-58. The Seventh Circuit framed materiality as a corollary to the well-established proposition that "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]--even if it is false in some technical sense." Id. at 758 (quoting Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009) (alterations in original)). Thus, "A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." Id. The Sixth Circuit has reached the same conclusion. See Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e).

Donohue v. Quick Collect, Inc., 592 F.3d 1027, 103. Thus, even if the note was available, the alleged statement that the note was unavailable is immaterial, and in fact afforded the borrower greater rights that she would otherwise have. Accordingly, Plaintiff has no claim under the FDCPA, and Count I should be dismissed.

> ### V.   Count II is not properly pled, and is contradicted by the allegations of the Complaint and the Exhibits.

Under Count II, Plaintiff claims that S&B failed to disclose the amount of the debt in the August 6, 2010 letter. A copy of the letter is attached to the Complaint at Exhibit C, and on the third page, specifically states: "As of August 6, 2010, our client has advised us that the amount of the debt is $338,855.06." Plaintiffs recite the same at paragraph 17 of the complaint. Thus, Count II is not properly pled and in fact contradicted by their own allegations. Accordingly, this Count must be dismissed.

WHEREFORE, S&B respectfully requests that Counts I, II, and IV of the Complaint be dismissed as to it, that it be awarded its fees in the action, and for such other relief as may be just and proper.

Respectfully Submitted,
**SHAPIRO & BURSON, LLP**
By Counsel

By:      /s/ Bizhan Beiramee
Bizhan Beiramee, Esq., (VSB # 50918)
Bizhan Beiramee, Esq., P.C.
6663 B Old Dominion  Drive, Third Floor
McLean, Virginia 22101
Phone: (703) 483-9600; Fax:  (703) 483-9599
Email: bbeiramee@beiramee.com
*Counsel for the Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December, 2011,  I electronically  filed the

foregoing pleading with the Clerk of the Court using the CM/ECF System, which will then send

a notification of such filing (NEF) to the following:

Joseph F. Verser, Esq.
Jones, Blechman, Woltz & Kelly, P.C.
701 Town Center Drive, Suite 800
P.O. Box 12888
Newport News, Virginia 23612-2888
Counsel for the Plaintiffs

By:      /s/ Bizhan Beiramee
Bizhan Beiramee