IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ERIC S. MOORE, et al.,

        Plaintiffs,

v.                               CASE NO. **4:11-cv-00122-AWA-TEM**

SHAPIRO & BURSON, LLP,

        Defendant.

## PLAINTIIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COME NOW the Plaintiffs, by counsel, and for their Memorandum in Opposition to Defendant's Motion to Dismiss, they state as follows:

### INTRODUCTION

This case is brought under a single statute – the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Plaintiffs allege that Defendant, an acknowledged debt collection foreclosure mill, made statements and acted in a manner that violated this rigorous strict liability statute. The case and claims are the same that have been brought, and survived Rule 12(b)(6) challenge in *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011), and *Naim v. Samuel I. White, P.C.*, Civ. No. 3:11civ168 (E.D. Va. August 12, 2011). And yet Defendant would have the Court believe that the present case depends not on it's adherence to the many restrictions on its conduct imposed under the FDCPA, but rather on a necessary challenge to the "validity of the foreclosure sale" or "the authority of [Bank of America] to appoint the substitute trustee." Such conclusions are not necessary conditions to a successful FDCPA claim, and in this case regard only one Count out of four. The federal statute

imposes requirements of clarity, truth and full disclosure not necessarily restrictive of a state law based foreclosure.  Law as regards the later is fairly permissive.  Virginia's non-judicial foreclosures are set aside only under limited circumstances.  State commercial law provides considerable flexibility for the free and even unrecorded assignment of mortgage notes.  In contrast, the FDCPA is not a contract-based statute and does not take all parties on an equal footing.  It protects the "least sophisticated" consumer against confusion and incomplete information.  And the mere fact that Defendant must wade deeply into its multi-step explanation of its conduct and the representations it made in its collection letters is proof enough of the FDCPA's violation.

In this case, Plaintiffs allege that Defendants violated the FDCPA in multiple distinct ways, either by withholding or inaccurately making required disclosures or by making misleading statements and inaccurate representations in its collection letters.  The allegations as pled, and even the evidence proffered in Defendant's response, more than adequately state a claim.

## FACTUAL ALLEGATIONS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not the proper vehicle to raise new facts or suggest factual disputes by way of argument or documents outside the pleadings, yet this is what the Defendant attempts. It is well settled that a court must accept as true all the factual allegations contained in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  When documents are attached to a Defendant's Motion to Dismiss, the court may exclude the documents, consider the motion to be for summary judgment, or in limited circumstances, consider the documents so long as the plaintiff does not dispute their authenticity and that the document is both explicitly relied upon in the complaint and integral to the plaintiff's claim.

*Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *M. Shanken Communications, Inc. v. Variant Events, LLC*, 3:10-CV-804, 2011 WL 2078007, at *2 (E.D. Va. May 25, 2011); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Still, "if the parties submit documents outside the pleadings, 'the Court ... retains discretion to disregard any extraneous exhibits submitted by Defendant and to treat the motion as a standard one for failure to state a claim under Rule 12(b)(6) [ .]'" *M. Shanken Communications, Inc*, 2011 WL 2078007, at *2(quoting *Harmon v. CB Squared Servs. Inc.*, No. 3:08–CV–799, 2009 WL 234982 (E.D.Va. Jan. 30, 2009) (citing *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir.2007)).

This court and the Fourth Circuit have consistently instructed courts to refuse to consider documents outside the pleadings as well as facts supplied by counsel when deciding a motion to dismiss unless the documents or facts fall squarely within the contours of the exception that only documents integral to the plaintiffs claims may be considered. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d at 448-50 (reversing the district court's reliance both on fact statements presented by counsel and the agreements that purportedly established a defense against anti-competition claim); *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed.Appx. 820, 825 (4th Cir.2010) (statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion).

Adopting the rationale articulated by the Third Circuit in *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997), the Fourth Circuit held

> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint-lack of notice to the plaintiff-is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if

> the statement were examined in the full context of the document, it would be clear
> that the statement was not fraudulent.

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d at 234. The Defendant here has

sidestepped the issue that its attempt to include documents is within the narrowly drawn

exception to the general rule.  In fact, there are instances where court may not rely on every

document referenced in the Complaint itself if such document does not give rise to the legal

contentions made:

> Yet it is important to note that this principle does not apply to any and all
> documents that might be referenced in a complaint; rather, this principle requires
> more: it requires that the referenced document be central or integral to the claim
> in the sense that its very existence, and not the mere information it contains, gives
> rise to the legal rights asserted. The cases illustrate this requirement. Thus, where
> a complaint in a fraud action references a document containing the alleged
> material misrepresentations, the referenced document may be considered part of
> the complaint.

*Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806-07 (E.D. Va. 2007)(refusing to consider a

newspaper article referenced in a Complaint containing what might be material statements

because of the unreliability of the underlying source).

In this case, it is improper for the court to consider any document or purported fact that is

not integral to the FDCPA claims, even if the court surmises that such documents could be

dispositive of some material fact down the road.  *See Beasley v. Arcapita Inc.*, 436 F.App'x at

267.  The documents and facts presented by the Defendant are not material to any element of the

FDCPA claims and would not be dispositive in any event.  Therefore, it would not be proper or

particularly useful to convert the motion to one for summary judgment not only because the

Defendant's facts and documents are not material to the plaintiff's claims but also because there

has been no opportunity for reasonable discovery. *E.I. du Pont de Nemours & Co. v. Kolon

Indus., Inc.*, 637 F.3d at 448-50 (quoting *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985)).  It is

proper for the court to strike the improper documents attached to the Motion to Dismiss and otherwise refuse to consider them.  Whatever facts the court relies upon in reaching its decision, it must rely on the well-pled facts of the complaint and reasonable inferences in favor of the Plaintiff, not on the Defendant's supplemental facts and extrinsic documents which have nothing to do with the causes of action in the Complaint.

The facts as alleged in the Complaint are:

1.      Mr. and Mrs. Moore are "consumers" and owned their home in Newport News, Virginia.  ¶¶ 3, 6, 9.  They financed their home in 2006 by a Deed of Trust Note initially payable to "American Home Mortgage."  ¶7, Exhibit "B" (the "Note").  The 2006 principal amount was $290,000.00. *Id.*

2.      After financing, all of the "servicing" of the Note was handled by "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP" ("BAC Home Loans").  ¶8.

3.      After paying on the loan for nearly four years, the Plaintiffs fell behind on the Note in 2010 when Mr. Moore suffered a financial hardship with his job.  ¶10.

4.      After Plaintiffs' account went into default, the account was referred to Defendant for collection.  ¶¶ 11, 15, *in passim*.  Defendant is a "Debt Collector" governed by all provisions of the FDCPA. ¶¶ 4, 5, 13-18. *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464 (E.D. Va. 2011); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006).[1]

5.      Defendant commenced its collections efforts against the Moores by letter dated August 6, 2010, as attached to the Complaint.  ("August 6, 2010 Letter").  ¶¶15, Exh. C.

6.      The August 6, 2010 letter made the following representations, amongst others, each of which was false or misleading:

a.      That as of August 6, 2010, the amount of the debt owed by the Moores was $338,855.06;

b.      That the current creditor to whom the debt was actually owed was "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP";

c.      That "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP" was on that day the Holder of the Note;

---

[1] Defendant has not challenged its classification as a FDCPA-governed "debt collector." Accordingly, Plaintiff does not address this issue further.
[2]  The Defendant is bound by the allegations in the Complaint that its August 6, 2010 letter failed to state the actual amount owed.  But even if extraneous documents and evidence were integrated

     d.     That Defendant's was retained as counsel for "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP";

     e.     That the promissory note secured by the deed of trust on the subject property was unavailable to the Defendant. Exh. C.

     7.     Defendant used the statement that the Note was "unavailable to the Defendant" to attempt its use of the state law disclosure requirement at Virginia Code §§55-59.1(B), and intended the document to constitute its "lost note letter". Ex. D, ¶37.

     8.     In fact, at the time Defendant mailed the August 6, 2010 letter, the note was not lost or otherwise unavailable to it. ¶¶35-38, Exh. D.

     9.     Defendant threatened to foreclose upon the Plaintiffs' home and represented that it had already been properly appointed as substitute trustee to do so. ¶¶ 15; Exh C.

     10.     The scheduled foreclosure was a nonjudicial action that sought to permanently deprive Plaintiffs of their ownership rights in their home. ¶ 54.

     11.     BAC Home Loans Servicing, LP had no authority to appoint Defendant as a substitute trustee as BAC Home Loans Servicing, LP was not the noteholder. ¶ 55. BAC Home Loans Servicing, LP was not the owner of the loan at the time Defendant was appointed substitute trustee and at the time it scheduled the foreclosure. ¶ 56-58.

## ARGUMENT OF LAW

Defendant supports its motion to dismiss by simply ignoring the salient facts alleged in the Complaint and disregarding the limitations of a Rule 12(b)(6) motion. This Court recently summarized the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 467 (E.D. Va. 2011). A motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a claim, not the facts supporting it. *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007). Thus, in deciding a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), as well as provable facts consistent with those allegations, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and view those facts in the light most favorable to the plaintiff, *Christopher v. Harbury,* 536 U.S. 403, 406, 122 S.Ct. 2179,

153 L.Ed.2d 413 (2002). Suffice it to say that these detailed factual allegations must be accepted

as true and, as shown below, demonstrate that Mr. and Mrs. Moore have stated a claim under the

FDCPA for the relief requested.

The FDCPA was enacted to protect consumers from abusive and deceptive debt

collection practices, and to insure that non-abusive debt collectors would not be competitively

disadvantaged. 15 U.S.C. § 1692(e); *Morgan v. Credit Adjustment Board,* 999 F.Supp. 803, 806

(E.D.Va.1998). To establish a violation of the FDCPA, three requirements must be satisfied: (1)

the plaintiff who has been the target of collection activity must be a "consumer" as defined in §

1692a(3); (2) the defendant collecting the debt must be a "debt collector" as defined in §

1692a(6); and (3) the defendant must have engaged in any act or omission in violation of the

FDCPA. *Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005); *Withers v. Eveland*,

988 F. Supp. 942, 945 (E.D. Va. 1997).

In evaluating alleged violations of the Act, the Fourth Circuit applies the objective "least

sophisticated debtor" standard. *U.S. v. National Fin. Serv., Inc.,* 98 F.3d 131, 135–36 (4th

Cir.1996). ("The basic purpose of the least-sophisticated-consumer standard is to ensure that the

FDCPA protects all consumers, the gullible as well as the shrewd.").

**A.     The Complaint States a Claim for Defendant's Violations of The FDCPA, 15
U.S.C. §1692g.**

Counts II and III of the Complaint each allege violations of § 1692g of the FDCPA. This

section states, in relevant part:

> **(a) Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the
> collection of any debt, a debt collector shall, unless the following information is
> contained in the initial communication or the consumer has paid the debt, send the
> consumer a written notice containing--
> **(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g.  The Complaint properly states a claim that Defendant violated this section in

multiple ways.

1.     **Defendant concedes its violation of §§ 1692g(a)(3)-(5) and 1692g(b) (Count III).**

Defendant does not challenge Plaintiff' allegation that Defendant violated 15 U.S.C. §

1692g by its improper disclosure of the consumers' FDCPA validation and dispute rights.

Complaint ¶¶ 22-33, 49-51.  "Congress included the debt validation provisions in order to

guarantee that consumers would receive adequate notice of their legal rights. *See* S.Rep. No. 382,

95th Cong., 1st Sess. 4, 8, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699, 1702."

*Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991).  The validation

language in the FDCPA details a consumer's rights when first contacted by a debt collector, such

as Defendant, about a debt.  In addition to the debt collector's obligations to inform the consumer

of the amount of the debt and the identity of the creditor to whom the debt is ultimately owed, the validation notice must also inform the consumer that:

> [I]f the consumer notifies the debt collector <u>in writing</u> within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt … and a copy of such verification or judgment will be mailed to the consumer by the debt collector. §1692g(a)(4);

> [If] a statement that, upon the consumer's <u>written request</u> within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. §1692g(a)(5); and

> If the consumer notifies the debt collector <u>in writing</u> within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt … or the name and address of the original creditor, and a copy of such verification …, or name and address of the original creditor, is mailed to the consumer by the debt collector.  §1692g(b).

(Emphasis added).  In each of these instances, these rights – to demand validation, make a dispute and force a cessation of collection efforts in the interim – are afforded only to a consumer who makes the dispute or demands verification <u>in writing</u>.  "Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing[.]" *Id.*

The Complaint alleges that Defendant's August 6, 2010 letter violated these provisions by failing to inform the Plaintiffs that their disputes and verification requests had to be in writing.  Compl. ¶¶ 24,25, 28.  Nowhere in the letter does it state that Plaintiffs would have to dispute the debt <u>in writing</u> in order to trigger their right to obtain verification of the debt or to obtain from Defendant the name and address of the creditor if different from the current creditor. *Id*. ¶ 30.  Similarly, the August 6, 2010 letter fails to disclose that Plaintiffs would have to dispute the debt <u>in writing</u> in order to trigger the §1692g(b) requirement that Defendant cease

collection of the debt, or any disputed portion thereof, until Defendant obtains verification of the

debt or a copy of the judgment, or the name and address of the original creditor, and a copy of

such verification of judgment, or name and address of the original creditor, is mailed to

Plaintiffs.  *Id*. ¶¶ 31, 32.

This Court has previously held that failure to provide notice of the writing requirement

under §1692g violates the FDCPA.  *See Withers v. Eveland*, 988 F.Supp. 942, 947 (E.D. Va.

1997).  As Judge Hudson stated more recently, "[t]he plain meaning of §1692g is that . . . debtors

can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute."  *Bicking*

*v. Law Offices of Rubenstein & Crogan*, 2011 WL 1740156 *3 (E.D. Va. 2011).

**2.     Defendant violated §1692g(a)(1) when it did not disclose the actual amount of**
**the debt in the August 6, 2010 dunning letter. (Count II).**

Defendant's entire defense to the allegation that it did not disclose the actual amount

owed is in one paragraph in which it asserts that because the documents the Plaintiffs received

from Defendant state an amount, $338,855.06, that must be the amount owed.   Def. Mem. at 24.

In fact, Plaintiffs' allegation is that Defendant may have disclosed an amount, but that amount

was not the one actually owed.  ¶¶20, 45.[2]  An incomplete or inaccurate statement does not

satisfy § 1692g(a)(1)'s requirement to state the "amount of the debt."  *Hepsen v. J.C.*

*Christensen & Associates, Inc.*, 8:07CV1935-T-EAJ, 2009 WL 3064865 (M.D. Fla. Sept. 22,

2009) *aff'd sub nom. Hepsen v. Resurgent Capital Services, LP*, 383 F. App'x 877 (11th Cir.

2010) ("A dunning letter must state the exact and correct amount of the debt in order to comply

---

[2]  The Defendant is bound by the allegations in the Complaint that its August 6, 2010 letter failed
to state the actual amount owed.  But even if extraneous documents and evidence were integrated
at this posture, Plaintiffs would still state a case.  On a $ 290,000 original principal, paid on time
for four years before default, Defendant represented a gross balance that was over $ 10,000
greater than the actual full balance Defendant later reported to the Newport News Commissioner
of Accounts.

with § 1692g(a)(1).").   Defendant is bound by the allegations in the Complaint.  Plaintiff has

stated a claim under 15 U.S.C. ¶1692g(a)(1).[3]

3.       **Defendant violated §1692g(a)(2) when it did not disclose the creditor to**

**whom the debt was actually owed in the August 6, 2010 dunning letter. (Count III).**

Section 1692g(a)(2) requires the Defendant debt collector to disclose in its initial contact

letter – the August 6, 2010 letter – "the name of the creditor to whom the debt is owed."  15

U.S.C. § 1692g(a)(2).  Defendant's letter stated: "The creditor to whom the debt is owed is <u>BAC</u>

<u>HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING,</u>

<u>L.P.</u>" Exh. C. (Emphasis is original).  The August 6, 2010 letter also represented that on that

date Defendant was the "Holder" of the note.  *Id.*  Plaintiffs expressly allege that August 6, 2010

letter did not disclose the name of the creditor to whom the debt is owed (¶¶ 21, 48,), that the

Defendant was operating as a debt collector (rather than the creditor), (¶ 39), that a different

entity was the actual note holder (¶ 55) and that a different entity was the actual owner of the

note (¶ 57).

*The Complaint alleges that BAC Home Loans Servicing, LP was not the actual "creditor."*

Defendant challenges the Plaintiffs' factual allegations that BAC Home Loans Servicing,

LP was not the actual "creditor" on August 6, 2010 when Defendant sent its FDCPA disclosure

letter, but it does so by relying on assertions or documents not pled in or integral to the

allegations in the Complaint.  Defendant asserts, "BAC is the holder, loan servicer, and

beneficiary of the loan, and therefore constitutes the creditor to whom the debt is owed." Def.

Mem. at 5.  Defendant is incorrect.  The Complaint alleges that BAC Home Loans Servicing, LP

was neither the creditor nor the "holder" on August 6, 2010.  Defendant is bound by these

---

[3] Plaintiffs will also shortly file an Amended Complaint to plead additional violations of
§1692e(2) and §1692f(1).

allegations.  Further, even if the case at this Rule 12(b)(6) posture were to devolve into a mini-trial on the proffers and extra-pleading allegations of the parties, the Court would still find that this was true.  There is just no evidence available to establish that this entity - BAC Home Loans Servicing, LP – owned the subject debt or held the subject note (two different things) on August 6, 2010.  Finally, even if Plaintiff were wrong as to those facts and BAC Home Loans Servicing, LP was the constructive holder of the note on August 6, 2010, this does not also lead to a conclusion that it was the actual creditor under the FDCPA.[4]

 Defendant makes its argument without even a minimal discussion of the FDCPA.  Not one statutory provision is discussed in opposing the allegation that Defendant is not the creditor.  This is a mistake.  The FDCPA is a different statue entirely.  Under the FDCPA, "[t]he term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).  Certainly Defendant does not claim that BAC Home Loans Servicing, LP was the person who initially offered or extended the Plaintiffs credit back in 2006.  Instead, though they never argue as much, Defendant would have to establish that BAC Home Loans Servicing, LP was the actual entity to whom the debt was owed (on August 6, 2010) and that that BAC entity did not receive assignment or transfer of the debt "for the purpose of facilitating collection of such debt for another."  *Id*.  At least 14 pages of Defendant's brief is devoted exclusively to its explanation that BAC had authority to foreclose, was the beneficiary of the Deed of Trust and was technically the note holder.  Def. Mem. at 5-18.  Again, below,

---

[4] Defendant focuses its challenge almost entirely on the issues presented by Count IV of the Complaint; the allegation that the appointment of trustee was not authorized by the holder of the note.  Plaintiff addresses the issues as regard Count IV in separate argument.

Plaintiff will address Defendant's argument that the foreclosure was authorized.  But for the present question – whether or not, on August 6, 2010, Defendant accurately stated that BAC Home Loans Servicing, LP was the actual creditor – Defendant's brief offers little argument. Possession of the Note and authority to act on behalf of the owner of the Note do not establish BAC as the FDCPA "creditor."  15 U.S.C. § 1692a(4).  In fact, since the statute was enacted, and even within its legislative history, mortgage servicers have been considered apart from the separate category, creditor.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *See* S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Ad.News 1695, 1698.")

### Defendant improperly ignores the distinction between various Countrywide and Bank of America entities.

The original Note evidences an assignment from the original lender, American Home Mortgage, to "Countrywide Bank, N.A."  Def. Mem.  Countrywide Bank, N.A. then assigned the Note to Countrywide Home Loans, Inc., which then endorsed the Note in blank.  *Id.*  This is the last transfer revealed in the Pleadings, either by the Plaintiffs or by Defendant.  There is no known endorsement from Countrywide Home Loans, Inc. to "Countrywide Home Loans Servicing, LP" or to "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP." This is a material distinction.  These are different legal entities.  If a consumer had sued one, mistaking it for the other, certainly the response would have been that the consumer had named the incorrect entity.  That corporate formalities matter.  And sure enough, this is exactly the conclusion reached by in a comparable mortgage matter.  *In re Kemp*, 440 B.R. 624, 634 (Bankr. D.N.J. 2010) ("As noted, Countrywide Home Loans, Inc. is listed as the servicer on the

debtor's loan. However, there is serious question raised about the authority of that entity to file a proof of claim on behalf of the Bank of New York. A Power of Attorney dated November 15, 2005 was submitted, affording Countrywide Home Loans Servicing LP, not Countrywide Home Loans, Inc., the limited opportunity to perform all necessary acts to foreclose mortgage loans, dispose of properties and modify or release mortgages, presumably including the authority to file a proof of claim in a bankruptcy case.")  Even assuming the facts and documents improperly asserted into the Rule 12(b)(6) posture, all of the documents available indicate a creditor other than "BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP."

### *Fannie Mae is the actual creditor.*

Defendant complains that the Complaint does not hypothesize as to the identity of the actual creditor and as well that Plaintiff acknowledges owing money to someone, that someone a person who could have acted to enforce the note.  But neither Rule 12(b)(6) nor the FDCPA require such allegation within a complaint.  There is not a Rule 9 heightened pleading standard requiring the "how, when, who or where" details of a fraud claim.[5]  The elements of a FDCPA claim are substantially less rigorous than a claim under state law.  *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 923-24 (E.D. Va. 2006); *Manlapaz v. Unifund CCR Partners*, 08 C 6524, 2009 WL 3015166 (N.D. Ill. Sept. 15, 2009).  The Complaint alleges – expressly so – that BAC Home Loans Servicing, LP was not the creditor, not the owner and not the holder on August 6, 2010.  On such facts, none of Defendant's theoretical arguments and state law summaries matter.  The Plaintiff alleges that the Defendant did not possess the Note, was not the owner of the Note and was only the servicer for an undisclosed entity.

---

[5] Even in a conventional fraud case, Rule 9(b)'s particularity requirement is relaxed when the details of the alleged misconduct are known to and within the Defendant's internal knowledge and control.

Yet if Defendant choses to attempt at a Rule 12(b)(6) posture a discussion of evidence that will be before the Court for summary judgment, Plaintiff can fairly preview same – a result even less favorable to Defendant than upon the more basic facts pled in the Complaint. Defendant is correct when, within its brief, it proffers that Fannie Mae is the entity alleged to be the actual creditor (as well as less materially the holder and owner of the Note). In the face of that fact, Defendant still attempts an extrapolation of the Virginia Commercial Code and a 2008 Fannie Mae Guideline bulletin to piece together a conclusion that BAC was a creditor under federal and state law. Defendant's premise for this argument is that the Fannie Mae Guidelines designate servicers as holders of the loan, and the Virginia Commercial Code establishes that the right to enforce a promissory note endorsed in blank (and hence bearer paper) inures to its holder.

Defendant's interpretation of the Fannie Mae Guidelines in conjunction with the Virginia Commercial Code is unsupported by the express statutory language in the Virginia Code and the applicable case law. Defendant's use of the Fannie Mae bulletin is certainly beyond the rights it is permitted under Rule 12(b)(6). Plaintiffs can simply state that it should be ignored. And they now do so. Yet, Defendant's venture outside the allegations of the Complaint and into the Fannie Mae Guidelines is also a dangerous one that it cannot win. The 2008 memorandum used by Defendant is only a supplement to the actual governing procedures between Fannie Mae, servicers such as BAC and debt collection law firms such as the Defendant. The actual formal procedures are contained in the *Fannie Mae Single Family Servicing Guide*.[6] (Hereafter "Servicing Guide"). The relationship between each of the three relevant parties – Fannie Mae as owner, BAC as servicer and Defendant as foreclosure law firm – are detailed within the guide.

---

[6] Publically available at and https://www.efanniemae.com/sf/guides/ssg/svcg/svc061011.pdf last visited January 25, 2012.

First, there is no doubt who Fannie Mae believes the FDCPA creditor to be – the entity to whom the debt is owed.  15 U.S.C. § 1692a(4).  The Servicing Guide states:

> Each transaction in which mortgage loans and/or participation interests, whether whole loan or for securitization, are delivered to Fannie Mae is expressly intended, by both Fannie Mae and the lender, to be the lender's true, absolute, and unconditional sale to Fannie Mae of the mortgage loans and/or participation interests, and not the lender's pledge thereof to secure a debt or other obligation owed to Fannie Mae.

*Servicing Guide*, § 201.03, Nature of Mortgage Loan Transactions.  Servicers such as BAC are not collecting mortgage payments for their own benefit.  They are plainly not the actual creditor to whom the payment, the mortgage debt, is owed.  BAC is simply a collection agent for Fannie Mae:

> The servicer's authorization to receive, handle, or dispose of funds representing mortgage loan payments (for principal, interest, and tax and insurance escrows) or of other funds or assets related to the mortgage loans it services for Fannie Mae or to the properties secured by those mortgage loans is limited to those servicing actions that are expressly authorized in this Guide or in the Lender Contract. Since these funds and assets are owned by Fannie Mae and other parties (such as the borrower, a participating lender, or an MBS holder), the servicer in its handling of these funds is acting on behalf of, and as a fiduciary for, Fannie Mae and other parties, as their respective interests may appear—and not as a debtor of Fannie Mae.

*Id*., § 202.02, Processing of Funds.  Immediately upon receipt of a consumer's mortgage payment, the servicer, BAC, is required to deposit it into a custodial bank account that is constructively Fannie Mae's.  Mortgage payments are not even for a moment within the constructive possession of the servicer, BAC.  *Id*., § 101, Custodial Bank Accounts.  BAC is paid a servicing fee and does not even share in the actual principal and interest mortgage payment. *Id*., § 203, Servicing Compensation.  "Servicing fees are payable to the servicer … as long as the servicer collects and remits the mortgage loan payments."  *Id*., § 203.01, Servicing Fees.

Defendant understands all of this.  It absolutely knows that the actual creditor is Fannie Mae.  And it knows who its actual client is.  Contrary to the false statement made in the August 6, 2010 letter, Defendant is retained by Fannie Mae.  Fannie Mae requires its servicers such as BAC to use "Fannie Mae retained attorneys" from a list organized by state.  (Defendant of course is on that list.[7]) *Id.*, § 104.01, Fannie Mae-Retained Attorneys.  Defendant was required to execute its engagement letter with Fannie Mae, not BAC, amongst other requirements:

> Each retained attorney will execute an engagement letter with Fannie Mae which will, among other things:
> · document the existence of an attorney-client relationship with Fannie Mae;
> · acknowledge Fannie Mae's right to communicate directly with the attorneys and monitor and/or audit the attorneys' handling of its cases;
> · specify the attorney's fees, impose limits on costs, and prohibit the payment of outsourcing or referral fees; and
> · require attorneys to directly notify Fannie Mae of nonroutine litigation and certain other matters.

*Id.*  Defendant is thus fully aware of who the actual creditor is; which entity is directing the collection of money and to whom the debt is owed.  But as if the above were still ambiguous, when the Defendant is hired to perform collection and foreclosure work, the Guide provides that: "In all cases, servicers must advise the attorney or trustee to whom the referral is made that Fannie Mae owns or securitizes the mortgage loan being referred."  *Id.*, § 104, Referral to Foreclosure Attorney/Trustee.

Even the one selective use that Defendant would make of Fannie Mae's Servicing Guide (or its related 2008 bulletin) defeats Defendant's contention. To make its assertion, Defendant must piece together a fragile chain of logic that requires step-by-step consideration.  Defendant's argument is basically structured like this:

---

[7] https://www.efanniemae.com/sf/technology/servinvreport/amn/pdf/retainedattorneylist.pdf last viewed on January 25, 2012.

a.     Fannie Mae was the owner of the Note;

b.     Fannie Mae has a policy that provides the servicer the ability to request or even to have constructive possession of the Note if needed to enforce it;

c.     This constructive possession automatically occurs whenever the servicer needs it to occur;

d.     When constructive possession automatically occurred, BAC became the Holder of the Note;

e.     When BAC became the Holder of the Note, it also became the actual Creditor.

Only the first of these assumptions is correct. Fannie Mae is the owner of the Note.

The second logic step is incorrect, or at least for these purposes immaterial. Defendant explains that the 2008 Fannie Mae "Announcement" allows "upon commencement of the foreclosure representation, the servicer is entitled to enforce the note as servicer in its own name, and that temporary transfer of possession of such note occurs automatically and immediately." Def. Mem. at 11. But what does this mean? Plaintiff agrees that if Fannie Mae authorizes BAC Home Loans Servicing, LP to conduct a foreclosure in its name, but on behalf of Fannie Mae, then BAC Home Loans Servicing, LP is permitted to do so. But this does not change the fact that BAC Home Loans Servicing, LP is not the "creditor" as that term is defined and used by the FDCPA. 15 U.S.C. § 1692a(4). Even if BAC Home Loans Servicing, LP is permitted to foreclose, and to collect upon the debt, the money received remains "owed" to Fannie Mae. Not just indirectly so, but through immediate deposit once collected into a custodial account. All actions by the servicer, by BAC, are as the agent of Fannie Mae. The section of the Servicing Guide that explains "Note Holder Status for Legal Proceedings Conducted in the Servicer's Name" is § 202.07. The "temporary transfer of possession" of the note suggested by Defendant is detailed within this section. The very first part states, "Fannie Mae is at all times the owner of the mortgage note, whether the mortgage loan is in Fannie Mae's portfolio or part of the MBS

18

pool. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage

note, except in the limited circumstances expressly described below. Fannie Mae may have

direct possession of the note or a custodian may have custody of the note. If Fannie Mae

possesses the note through a document custodian, the document custodian has custody of the

note for Fannie Mae's exclusive use and benefit." *Servicing Guide*, § 202.07.01, Ownership and

Possession of Note by Fannie Mae.  Thereafter, Fannie Mae has created a process whereby the

servicer, as its agent, can order or request possession of the Note when the servicer begins a

foreclosure process:

> In most cases, a servicer will have a copy of the mortgage note that it can use to
> begin the foreclosure process. However, some jurisdictions require that the
> servicer produce the original note before or shortly after initiating foreclosure
> proceedings. If Fannie Mae possesses the note through its designated document
> custodian, to obtain the note and any other custody documents that are needed, the
> servicer must submit a request to the designated document custodian's electronic
> release system.

*Id.*, §102, Initiation of Foreclosure Proceedings.  Alternately, if physical possession of the Note

is not required (unlike in Virginia), Fannie Mae pre-delegates the transfer of constructive

possession. *Id.*, § 202.07.02, Temporary Possession by the Servicer. ("In order to ensure that a

servicer is able to perform the services and duties incident to the servicing of the mortgage loan,

Fannie Mae temporarily gives the servicer possession of the mortgage note whenever the

servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions,

bankruptcy cases, probate proceedings, or other legal proceedings.")  Put another way, Fannie

Mae still maintains physical possession of the note, but abstractly it would declare that legal or

constructive possession would now be in the servicer's name.

However, none of this changes the FDCPA designations and the fact that Fannie Mae

remains the "creditor" under the statute.  This is true for two principal reasons.  First, even if

19

BAC somehow magically has abstract possession of the Note (even though it remains in Fannie Mae's physical possession), its temporary possession is only for the limited purpose of collecting Fannie Mae's debt. It only has that magical possession when it is "represent[ing] the interests of Fannie Mae in foreclosure actions[.]" *Id.*, § 202.07.02, Temporary Possession by the Servicer. And Defendant knows this because when the property is foreclosed, Defendant is ordered to bid in by Fannie Mae for its benefit. And if the loan was somehow reinstated and money paid, that money would be paid immediately to Fannie Mae.

Second, this transfer of constructive possession of the Note is to take place when the Servicer begins the foreclosure process. By definition the debt is already in default when such a transfer is to occur. Under the FDCPA, "[t]he term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, <u>but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another</u>." 15 U.S.C. § 1692a(4) (Emphasis added). Thus, whether or not BAC could become a Holder, or even a "creditor" under the Uniform Commercial Code or other state law application, it could not become by such post-default transfer a "creditor" under the FDCPA.[8]

**Defendant represented that the Note was lost or unavailable and thus its possession could not have been transferred to BAC, constructively or physically.**

Defendant admits that in its August 6, 2010 letter, it represented that the Note was lost or unavailable. It represented that it did not have possession of the Note, stating the "the promissory note or other evidence of indebtedness under the deed of trust is for the referenced property is unavailable at this time." As stated in the Complaint, this is likely because the Note

---

[8] Defendant's suggestion that BAC would become the creditor when it took constructive possession of the Note would also lead to the absurd result that Fannie Mae would become a "debt collector" when constructive possession was transferred back with the Note still in default.

was lost, misplaced or damaged. *See generally Va. Code § 55-59.1*. Either way, the Plaintiffs

alleged that BAC was not in possession of the Note at the time of the August 6 letter.   It could

not have become a holder, or obtained any other interest in the Note without the transfer of

possession.   Thus, the facts alleged in the Complaint are sufficient to overcome a Rule 12(b)(6)

motion.

Now, despite this communication and the clearly pled allegations indicating otherwise,

the Defendant is arguing facts contrary to the allegations in the Complaint and in it own

correspondence, by now seeking to claim it was the "holder" of the note.  Without possession,

without the availability of the Note, it cannot obtain such status.

BAC was clearly not a creditor as that term is defined under the FDCPA.  But as well,

(though maybe without much cumulative effect given Defendant's FDCPA "creditor" problem),

Defendant cannot even overcome the allegations in the Complaint that BAC was not a "holder"

under the U.C.C.   A mortgage note is a negotiable instrument that is enforceable in Virginia by:

> '[p]ersons entitled to enforce' an instrument [which include] (i) the *holder* of the
> instrument, (ii) a *nonholder  in possession* of the instrument who has the rights of
> a holder, or (iii) *a person not in possession* of the instrument who is entitled to
> enforce the instrument pursuant to § 8.3A-309 or § 8.3A-418(d).

Va. Code § 8.3A-301 (emphasis added).  Virginia law defines a "holder" as "the person in

possession of a negotiable instrument that is payable either to bearer or to an identified person

that is the person ***in possession***." Va. Code § 8.1A-201(b)(21)(A) (emphasis added).  Thus, it is

clear from Virginia law that a promissory note can only be enforced by someone in possession of

the note unless the person satisfies Va. Code 8.3A-309. If the Note was ***unavailable***, the Servicer

clearly 1) was not the holder of the note and 2) did not have possession of the note to enforce it

for the holder. *See* Virginia Code § 8.3-804 & official comment (owner of lost, destroyed, or

stolen instrument is not holder because he is not in possession and does not have holder's prima

21

facie right to recover but must prove his case).  When discussing a Note endorsed in blank, the

United States Court of Appeals for the Fourth Circuit stated that "once transferred, the old adage

about possession being nine-tenths of the law is, if anything, an understatement. Whoever

possesses an instrument endorsed in blank has full power to enforce it." *Horvath v. Bank of N.Y.,*

*N.A.,* 641 F.3d 617, 621 (4th Cir. 2011); *See also Lambert v. Barker,* 232 Va. 21, 26, 348 S.E.2d

214, 216-17 (1986) ("It is clear that Davis was not the holder of the Barker note at the time of

payment, as the note was not in his possession.")

Further, the plain text of Virginia Code § 8.3A-309 establishes that lost promissory notes

are only enforceable by persons who were in possession of the promissory note when it was lost.

See Va. Code § 8.3A-309(1). Specifically, this section states, in relevant part: "a person not in

possession of an instrument is entitled to enforce the instrument if (i) the person was in

possession of the instrument and entitled to enforce it when the loss of possession occurred…."

*Id.*

This conclusion is also supported by the opinion of Judge Thacher in *Benkkahla v. White,*

82 Va. Cir. 116 (2011). In this case, Defendant Samuel I. White, P.C. ("White") contacted

plaintiff claiming that Defendant Deutsche Bank ("Deutsche Bank") was the current owner and

beneficiary of the note. *Id.* at 117. Moreover, White informed plaintiff that the "original note

evidencing your indebtedness has been lost, misplaced, or destroyed, and is unavailable." *Id.* In

response to this notice, plaintiff filed a Complaint arguing that Deutsche Bank could not

foreclose his property because Code § 8.3A-309 prohibits any holder from enforcing a negotiable

instrument that was lost prior to them taking possession. *Id.*

The court held that Deutsche Bank was clearly in violation of Code § 8.3A-309;

therefore, it could not enforce the note because it conceded it took possession of the note after it

was already lost. Similarly, if the Note was lost before BAC took possession, BAC could not

become a creditor even if its interpretation of the interplay between the Fannie Mae Guidelines

and Virginia Commercial Code are correct.  Even if Defendant's flawed reliance on Fannie

Mae's guidelines is appropriate, Defendant could not constructively possess a lost Note.

Accordingly, the Complaint alleges sufficient factual allegations to raise a right to relief under 15

U.S.C. § 1692g(a)(2).

**B.    The Complaint States a Claim for Defendant's Violations of the FDCPA, 15 U.S.C. §1692e.**

Count I of the Complaint alleges that Defendant violated § 1692e of the FDCPA.  Compl.

¶¶ 41,42.  Section 1692e states, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of this section:
> **[…]**
>     **(2)** The false representation of--
>         **(A)** the character, amount, or legal status of any debt; or
> **[…]**
>     **(10)** The use of any false representation or deceptive means to collect or
>     attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Plaintiffs allege that Defendant violated these proscriptions by "falsely

stating in the August 6, 2010 letter that the note was "unavailable" (Compl. ¶ 42) and "by falsely

stating that the creditor to whom the debt was owed was BAC Home Loans Servicing, LP." *Id.*,

¶ 43.

As to the first of these alleged misrepresentations – the claim that the Note was

"unavailable" – Defendant asserts only a single defense.  It claims that such misrepresentation is

not actionable because it was not material.  Importantly, and tellingly, Defendant does not deny

that its claim was untrue.  The Complaint alleges "the original note evidencing Plaintiffs'

indebtedness was not lost, misplaced, or destroyed." Compl. ¶ 35.  Defendant has in fact proven this fact by its reliance on the Fannie Mae Servicing Guide to establish its right to possession. *See also Servicing Guide*, § 102, Initiation of Foreclosure Proceedings, *cited verbatim supra*. (Detailing the procedure for a servicer to request and obtain the Note when a foreclosure process is commenced).  Further, Defendant later acknowledged the Note's availability when in its December 2, 2010 letter it stated that "we are in possession of the original Note in our office, copy attached."  A true and accurate copy of Defendant's December 2, 2010 letter is attached hereto as Exhibit "D."  Compl. ¶ 35.

The Complaint also alleges that Defendant misrepresented the name and identity of the actual FDCPA creditor.  *Id.*, ¶ 43.  Plaintiffs of course incorporate their earlier arguments in such regard.   However, it bears noting that the FDCPA demands a degree of clarity and comprehensible representations sufficient for the "least sophisticated consumer."  *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011).

Falsity and deception under § 1692e are tested by the "least sophisticated consumer" standard.  *United States v. National Financial Services, Inc.*, 98 F.3d 131, 135-36 (4th Cir. 1996).  "The test is the capacity...to mislead; evidence of actual deception is unnecessary."  *Id.* at 139.  The adoption of the least sophisticated consumer standard built on precedent under the Federal Trade Commission (FTC) Act.  *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172-75 (11th Cir. 1985).  The Second Circuit has explained the purpose and provenance of this standard:

> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law. More than fifty years ago, the Supreme Court noted that, the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive

others less experienced. There is no duty resting upon a citizen to suspect the
honesty of those with whom he transacts business.  Laws are made to protect the
trusting as well as the suspicious.

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1983) quoting *Federal Trade Commission v.
Standard Education Society*, 302 U.S. 112, 116, 82 L. Ed. 141, 58 S. Ct. 113 (1937).

Federal courts have developed "as a useful tool in analyzing the 'least-sophisticated-
consumer' test" for a § 1692e violation the "'more than one reasonable interpretation' standard."
*Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008).  This
test holds that a representation "is deceptive where it can be reasonably read to have two or more
different meanings, one of which is inaccurate."  *Brown v. Card Service Center*, 464 F.3d 450,
455 (3d Cir. 2006) (internal quote and citation omitted); *see also Russell v. Equifax A.R.S.*, 74
F.3d 30, 35 (2d Cir. 1996) (same).

In *Goodrow*, as in this case, a mortgage consumer sued a foreclosure law firm for
misrepresenting the identity of the creditor.  As in this case, the defendant failed to accurately or
clearly state the relationship between the servicer and Fannie Mae.  The defendant moved for
Rule 12(b)(6) dismissal with an explanation that explained how its identification of Fannie
Mae's involvement could have been accurate.   In applying the Fourth Circuit's "least
sophisticated consumer" standard, this Court rejected such a defense.  Judge Spencer explained,
"Under this test, a statement is false or misleading if 'it can be reasonably read to have two or
more meanings, one of which is inaccurate.' (citation omitted). The test requires a court to
consider a statement's 'capacity ... to mislead,' such that 'evidence of actual deception is
unnecessary.' *Nat'l Fin. Servs.*, 98 F.3d at 139." *Id*, 788 F. Supp. 2d at 472.  Refusing to engage
in the defendant's linguistic justification for its representation, the Court stated:

In this case, one of those meanings may fail to describe the relationship between
Fannie Mae and First Horizon and therefore may be false. Because one of those

meanings may prove to be a "deceptive or misleading representation or means," the Court will not dismiss Goodrow's claim based on the February 3 Deed. 15 U.S.C. § 1692e.

*Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 472 (E.D. Va. 2011).

The narrowness of Defendant's argument that its identification of BAC Home Loan as the FDCPA "creditor" might be literally true only serves to emphasize that Congress wrote § 1692e in the disjunctive to bar debt collectors from using "any false" as well as any "deceptive or misleading representation or means." If a literal truth versus literal falsity inquiry were the sole measure of a § 1692e violation, then Congress's inclusion of the additional language barring deceptive or misleading representations would be impermissibly superfluous. *See e.g. TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001). The possible ambiguity and vagueness that Defendants identify is not a defense to a § 1692e violation but defines it.

Defendant's only other argument for dismissal of the § 1692e claim is based on its misunderstanding of the FDCPA. Defendant argues, "Unclear is how such "misrepresentation", if true (for purposes of argument), could harm [the Plaintiffs]." Def. Mem. at 20. And it asserts, "Nor have [Plaintiffs] alleged reliance or even the potential of damages from such statement." *Id*, at 22-23. And finally, Defendant argues that such misrepresentations are therefore – because there was no reliance and no harm – not material. *Id*., at 23-24.

But Defendant confuses materiality with reliance and damages. Neither are required to prosecute a FDCPA claim. Judge Smith summarized the Court's rejection of similar defense arguments:

> A claim under § 1692e, however, differs substantially from a common law fraud claim. For example, a plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation. *United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 139 (4th Cir.1996) (reasoning that "evidence of actual deception is unnecessary" to establish a claim under § 1692e(10)). In addition, a plaintiff need not establish actual damages to prevail under the FDCPA. *See* § 1692k(a)(2)

> (providing for statutory damages in addition to actual damages); *Morgan v. Credit Adjustment Bd., Inc.,* 999 F.Supp. 803, 808 (E.D.Va.1998) (awarding a plaintiff statutory damages and costs). Furthermore, a plaintiff does not have a burden to establish scienter under the FDCPA. *See* § 1692k(c) (explaining that to avoid liability under the Act, the *defendant* may show that a violation was not intentional).  In other words, establishing a violation of § 1692e is a substantially different matter than establishing common law fraud.

*Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp.2d 918, 923-24 (E.D. Va. 2006) (Emphasis added).  And Judge Ellis more recently explained:

> The FDCPA provides a cause of action where a debt collector "use[s] any false, deceptive, or misleading representation or means in connection with the collection of any debt," and enumerates a nonexhaustive list of actionable conduct. 15 U.S.C. § 1692e. Importantly, the Fourth Circuit has held that "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *Nat'l Fin. Servs., Inc.,* 98 F.3d at 139; *see also Neild v. Wolpoff & Abramson, LLP,* 453 F.Supp.2d 918, 923 (E.D.Va.2006) ("[A] plaintiff asserting a claim under § 1692e need not prove actual reliance on a false representation.").

*Vitullo v. Mancini*, 684 F. Supp. 2d 747, 757-58 (E.D. Va. 2010).  *See also Manlapaz v. Unifund CCR Partners*, 08 C 6524, 2009 WL 3015166 (N.D. Ill. Sept. 15, 2009) ("[S]tatements regarding ownership and legal recourse are material.").

Particularly at this stage of the case, Plaintiffs have more than adequately pled a claim that Defendant violated 15 U.S.C. § 1692e.

**C.      The Complaint States a Claim for Defendant's Violations of the FDCPA, 15 U.S.C. §1692f.**

Count IV of the Complaint alleges that Defendant violated § 1692f of the FDCPA. Compl. ¶¶ 54-59.   Plaintiffs alleged that BAC Home Loans Servicing, LP lacked authority to appoint Defendant as a substitute trustee as BAC Home Loans Servicing, LP at the time that its purports to have done so (August 6, 2010).  Accordingly "Defendant threatened to take nonjudicial action to effect a dispossession or disablement of the Property at a time when they

had and there was no present right to possession of the Property claimed as collateral through an enforceable security interest, in violation of 15 U.S.C. §1692f(6)."  Compl. ¶ 59.

It is this Count to which nearly all of Defendant's brief is devoted.  And yet, there is really very little law that is in dispute.  Defendant's brief encyclopedically defends the rights of servicers to appoint a substitute trustee, to oversee and accomplish a foreclosure and to serve as a beneficiary for a Deed of Trust.  Most of the legal principles suggested by Defendant are undisputed to the extent they apply to Count IV.  To win the § 1692f claim, Plaintiffs must prove at trial that either BAC Home Loans Servicing, LP's did not execute the Substitute Trustee appointments or that as of the date it sign them, it was not authorized to do so.

Again, as to these questions of fact, Defendant ignores the Complaint.  As addressed above, the Complaint adequately alleges that BAC Home Loans Servicing, LP was not the owner or noteholder authorized to accomplish the foreclosure on the date the various appointments were allegedly executed.  Yet, while Defendants ignore the Complaint and suggest a series of facts and documents not pled therein, they again reveal the failure of their later merits defense.

However, more disturbing even at a Rule 12(b)(6) stage is the indicia of impropriety obvious on the face of the new documents Defendant attaches to its brief.  Each of the purported Assignments by MERS or the Substitute Trustee appointments was executed by the same person – Shanna Simmons.  Beyond the allegations in the Complaint, the Plaintiffs will establish that Shanna Simmons, who claims the authority of MERS to assign its beneficial interest in the Deed of Trust to BAC Home Loans Servicing, LP and of BAC Home Loans Servicing, LP to that same moment appoint Defendant's law firm as substitute trustee. Is actually just the foreclosure department manager for Defendant.  Plaintiffs have sufficiently alleged that Defendant threatened to take a foreclosure action it was not authorized to take.  Not because the law would

not permit such authorization.  Or because of some other complicated reason.  Instead, the

Complaint simply alleges that neither BAC Home Loans Servicing, LP nor Defendant were as of

August 6, 2010 appointed to carry out the foreclosure threatened in the letter of that same date.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Complaint must be

denied.

Respectfully submitted,

ERIC S. MOORE, et al.,

_____/s/_____
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2012 I have electronically filed the
foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification
to the following:

Bizhan Beiramee, Esq., (VSB # 50918)
Bizhan Beiramee, Esq., P.C.
6663 B Old Dominion Drive,
Third Floor
McLean, Virginia 22101
Phone: (703) 483-9600; Fax: (703) 483-9599

Email: bbeiramee@beiramee.com

_____ /s/
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
lenbennett@cox.net